UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

LoFaro & Reiser, L.L.P.
55 Hudson Street
Hackensack, New Jersey 07601
Glenn R. Reiser (GR/4439)
(201) 498-0400
E-mail: greiser@new-jerseylawyers.com
Attorneys for Defendants-Appellants, Harbir S. Riar,
Riar Petroleum Corp., and Shan & Co.

| | |
|---|---|
| In Re:<br><br>RABINDER SINGH and<br>NAVNEET K. RIAR,<br><br>              Debtors.<br><br>- - - - - - - - - - - - - - - - - - - - - - - - -<br><br>ARVIND WALIA,<br><br>            Plaintiff,<br><br>Vs.<br><br>RABINDER SINGH, a/k/a<br>RABINDER S. RIAR, NAVNEET K. RIAR a/k/a<br>NAVNEET SINGH, HARBIR S. RIAR,<br>RIAR PETROLEUM CORP., and JOHN DOE<br>CORPORATIONS 1-99, and SHAN & CO.,<br><br>            Defendants. | Case No:  2:07-cv-5541-PGS<br><br>On Appeal from:<br>United States Bankruptcy Court<br>District of New Jersey<br><br>Sat Below:<br>Honorable Donald H. Steckroth, U.S.B.J.<br><br>Chapter 7<br><br>Case No.: 02-41704 (DHS)<br>Adv. Pro. No.: 03-2810 |

---

## BRIEF OF DEFENDANTS-APPELLANTS, HARBIR S. RIAR, RIAR PETROLEUM CORP., AND SHAN & CO.

---

**On the Brief:**
Glenn R. Reiser
William C. LaTourette

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iii

BASIS OF APPELLATE JURISDICTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

STATEMENT OF ISSUES PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

STANDARD OF APPELLATE REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

      Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

      Procedural History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

      Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

LEGAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

POINT I:     THE BANKRUPTCY COURT ERRED AS A MATTER OF
              LAW AND FACT BY NOT GRANTING APPELLANTS'
              MOTION TO DISMISS PLAINTIFF'S AMENDED
              COMPLAINT DUE TO PLAINTIFF'S LACK OF STANDING
              TO PURSUE A FRAUDULENT CONVEYANCE CLAIM
              IN THE BANKRUPTCY COURT EXCLUSIVELY FOR
              HIS OWN PERSONAL BENEFIT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

              A.     Failure to State a Claim - Rule 12(b)(6) Standards . . . . . . . . . . . . .11

              B.     The Bankruptcy Code Expressly Vests Only The Trustee
                    With The Power To Avoid Fraudulent Transfers  . . . . . . . . . . . . . . .12

POINT II:    THE BANKRUPTCY COURT ERRED AS A MATTER OF
              LAW AND FACT BY FAILING TO DISMISS PLAINTIFF'S
              AMENDED COMPLAINT REGARDLESS OF HIS STATUS
              AS EITHER A SECURED OR UNSECURED CREDITOR,
              BECAUSE THE BANKRUPTCY COURT IS NOT THE
              APPROPRIATE FORUM FOR AN INDIVIDUAL CREDITOR
              TO PURSUE CLAIMS THAT DO NOT BENEFIT THE
               BANKRUPTCY ESTATE AS A WHOLE . . . . . . . . . . . . . . . . . . . . . . . . 16

              A.     Bankruptcy Court Jurisdiction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

              B.     Rights and Duties of Bankruptcy Trustees to Administer Estate. . . .18

POINT III:      THE BANKRUPTCY COURT ERRED AS A MATTER OF LAW
                AND FACT BY CONCLUDING THAT THE CHAPTER 7 TRUSTEE
                SHOULD BE SUBSTITUTED AS THE PROPER PARTY TO
                PURSUE PLAINTIFF'S STATE LAW FRAUDULENT
                CONVEYANCE CLAIMS AGAINST APPELLANTS
                PURSUANT TO FED. R. BANKR. P. 7017(a). . . . . . . . . . . . . . . . . . . . . . .20

POINT IV:       THE BANKRUPTCY COURT ERRED AS A MATTER OF LAW
                AND FACT BY CONCLUDING THAT THE DOCTRINE OF
                EQUITABLE TOLLING APPLIES TO AVOID EXPIRATION
                OF THE STATUTE OF LIMITATIONS ON THE CHAPTER 7
                TRUSTEE'S AVOIDANCE POWERS UNDER 11 U.S.C. 544(b). . . . . . .26

        A.      No Extraordinary Circumstances Exist to Apply the
                Doctrine of Equitable Tolling . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .26

        B.      The Bankruptcy Court Abused its Discretion by Applying
                the Doctrine of Equitable Tolling Despite Plaintiff's Failure
                to Plead The Trustee's Avoidance Powers. . . . . . . . . . . . . . . . . . . . 29

        C.      The Bankruptcy Court Abused its Discretion by
                Applying the Doctrine of Equitable Tolling to
                Resuscitate a Claim Waived by the Chapter 7 Trustee  . . . . . . . . . 29

        D.      The Bankruptcy Court Abused its Discretion by
                Applying the Doctrine of Equitable Tolling Because
                the Chapter 7 Trustee is Judicially Estopped From
                Asserting an Avoidance Claim  Against Appellants . . . . . . . . . . . 30

POINT V:        THE BANKRUPTCY COURT'S FINDINGS THAT THE
                CHAPTER 7 TRUSTEE'S ANALYSIS WAS ADVERSELY
                AFFECTED BY PLAINTIFF'S ASSERTION OF HIS
                SECURED STATUS CONSTITUTES AN UNWARRANTED
                INTRUSION INTO THE TRUSTEE'S BUSINESS
                JUDGMENT, AND THEREFORE IS CLEARLY ERRONEOUS  . . . . . . 32

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .34

## TABLE OF AUTHORITIES

**Cases**                                                                        **Page**

*Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys.*, 988 F.2d 1157
    (Fed. Cir. 1993), *reh'g en banc den.*, *Hess v. Advanced Cardiovascular Systems, Inc.,
    Inc.*, 520 U.S 1277 (1977) ...............................................................................11
*Auxano, Inc., In re*, 87 B.R. 72 (Bankr. W.D.Mo. 1988) .............................................24
*Bender v. Williamsport Area School Dist.*,
    475 U.S. 534, 106 S.Ct 1326, 89 L.Ed.2d 501 (1986) .............................................12
*Beydoun v. U.S., 969 F.Supp. 283 (D.N.J. 1997)* .......................................................26
*Blackewell v. Lurie (In re Popkin & Stern)*, 223 F.3d 764 (8th Cir. 2000) ....................13
*Bldgs. by Jaime, Inc., In re*, 230 B.R. 36 (Bankr.D.N.J.1998) ....................................27
*Cellnet Data Systems, Inc., In re*, 327 F.3d 242 (3rd Cir. 2003) ...................................3
*Classica Group, In re*, 2006 WL 2818820 (Bankr. D.N.J. 2006) .................................32
*Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) ...............................12
*Country Chevrolet, Inc. v. Township of N. Brunswick Planning Bd.,*
    190 *N.J. Super.* 376 (App.Div.1983) .....................................................................30
*Cybergenics Corporation, In re*, 330 F.3d 548 (3rd Cir. 2003) ..............................15, 16
*Davis v. Wakelee*, 156 U.S. 680, 15 S.Ct. 555, 39 L.Ed. 578 (1895) ...........................30
*Delgrosso v. Spang & Co.*, 903 F.2d 234 (3rd Cir.), *cert. denied,*
    498 U.S. 967, 111 S.Ct. 428, 112 L.Ed.2d 412 (1990) ...........................................30
*Dioniso, In re*, 80 Fed. Appx. 285 (3rd Cir. 2003) .....................................................12
*Dudley v. Easton*, 104 U.S. 99, 26 L.Ed. 668 (1881) .................................................18
*Dygert*, 232 B.R. 155, *In re* (Bankr. D.Minn. 1999) ..................................................23
*Eastwind Group, Inc., In re*, 303 B.R. 743 (Bankr. E.D.Pa. 2004) ..............................32
*Electro-Wire Prods., Inc. v. Sirote & Permutt, P.C. ( In re Prince),*
    40 F.3d 356 (11th Cir.1994)..................................................................................4
*Federal Mogul Global, Inc., In re*, 293 B.R. 124 (D.Del. 2003) ..................................32
*Feist  v. Consolidated Freightways Corp.*, 100 F.Supp.2d 273 (E.D. Pa. 1999) ............24
*G-1 Holdings, Inc., In re*, 313 B.R. 612 (Bankr. D.N.J. 2004) ..............................26-27
*Gibbons v. First Fid. Bank, N.A. (In re Princeton-New York Investors, Inc.),*
    199 B.R. 285 (Bankr.D.N.J.1996) ........................................................................27
*Hannah, In re*, 316 B.R. 57 (Bankr. D.N.J. 2004) .................................................14, 16
*Hartford Underwriters Ins. Co. v. Union Planters Bank, NA.,*
    530 US 1, 120 S.Ct 1942 (2000) .....................................................................14-16
*Hess v. Eddy*, 689 F.2d 977 (11th Cir.1982), *cert. denied,*
    462 U.S. 1118, 103 S.Ct. 3085, 77 L.Ed.2d 1347 (1983) .......................................23
*Holmberg v. Armbrecht,* 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946) .................26
*Integrated Agri, Inc., In re*, 313 B.R. 419 (Bankr. C.D.Ill. 2004) ............... 13, 18-19, 23 n. 17, 24
*International Union v. Mack Trucks, Inc.,* 820 F.2d 91 (3rd Cir.1987)) ........................4
*Interpictures, Inc., In re*, 168 B.R. 526 (Bankr. E.D.N.Y. 1994) .................................32
*Jones v. Morton*, 195 F.3d 153 (3rd Cir. 1999) ...................................................27-28
*Joseph Albert Cassis, III, In re*, 220 B.R. 979 (Bankr. N.D.Iowa 1998) .......................13
*J.P. Fyfe, Inc. of Florida v. Bradco Supply Corp.*, 891 F.2d 66 (3rd Cir.1989) ...............3
*Kool, Mann, Coffee & Co. v. Coffey*, 300 F.3d 340 (3rd Cir. 2002).................................4
*Marcus Hook Dev. Park, Inc., In re*, ....................................................................17
*Marlar, In re*, 252 B.R. 743 (BAP 8th Cir. 2000) ......................................................12

iii

**Cases (continued)** .................................................................................................**Page**

*Martin*, *In re*, 91 F.3d 389 (3ʳᵈ Cir. 1996) ...................................................................32

*Mellon Bank, N.A. v. Metro Commc'n, Inc.*, 945 F.2d 635 (3ʳᵈ Cir.1981)..........................3

*Merchs. Indem. Corp. of N.Y. v. Eggleston,*
 68 N.J. Super. 235 (App.Div.1961), *aff'd*, 37 *N.J.* 114 (1962) .............................30

*Michener*, *In re*, 217 B.R. 263 (Bankr. D.Minn. 1998) ...................................................19

*Miller v. New Jersey State Dep't of Corrections*, 145 F.3d 616 (3ʳᵈ Cir.1998) .................28

*Morris v. Azzi*, 866 F.Supp. 149 (D.N.J. 1994) ..............................................................11

*National Labor Relations Bd. v. Frazier*, 966 F.2d 812 (3ʳᵈ Cir.1992) ............................4

*Nebraska State Bank of Jones*, 846 F.2d 477 (8ᵗʰ Cir. 1988)...........................................13

*Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 102 L.Ed.2d 32 (1989) ...................11

*Olsen, in re*, 36 F.3d 71 (9ᵗʰ Cir.1994) .......................................................................26

*Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380 (3ʳᵈ Cir. 1994) ...................27

*Pacor v. Higgins*, 743 F.2d 984 (3ʳᵈ Cir. 1984) ......................................................17, 20

*Pearson Industries, Inc., In re,* 178 B.R. 753 (Bankr. C.D.Ill. 1995) ..............................18

*Portage Insulated Pipe Co. v. Costanza*, 114 N.J. Super. 164 (App. Div. 1971) ...........19-20

*Rambo*, *In re*, 297 B.R. 418 (Bankr. E.D.Pa. 2003) ......................................................18

*Ryker*, *In re*, 315 B.R. 664 (Bankr. D.N.J. 2004) ....................................................12, 23

*Sharon Steel Corp., In re,* 871 F.2d 1217 (3ʳᵈ Cir.1989) ..................................................3

*Scarano v. Central R.R.*, 203 F.2d 510 (3ʳᵈ Cir.1953) .............................................30-31

*Seitzinger v. Reading Hosp. & Med. Cter.*, 165 F.3d 236 (3ʳᵈ Cir. 1999) ........................26

*Sioux Falls Cable Television v. State of South Dakota*, 838 F.2d 249 (8ᵗʰ Cir. 1988) .........12

*Surf N Sun Apts., Inc., R.D.M.H., Inc., In re*, 253 B.R. 490 (M.D.Fla. 1999) ............13, 19

*Taylor, Matter of*, 103 B.R. 511 (D.N.J. 1989) .............................................................32

*The Guild & Gallery Plus, Inc., In re*, 72 F.3d 1171 (3ʳᵈ Cir. 1996)................................17

*Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98 (3ʳᵈ Cir.1981) ......................3

*United States v. United States Gypsum* Co.,
 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948)..................................................3

*U.S. v. Aetna Cas. & Sur. Co.*, 338 U.S. 366, 70 S.Ct. 207, 94 L.Ed. 171 (1949) ..........23

*U.S. v. Gaubert*, 499 U.S. 315 (1991) .........................................................................12

*Walnut Assocs., In re*, 145 B.R. 489 (Bankr.E.D.Pa.1992) ...........................................31

*Weiburg v. GTE Southwest Inc.*, 272 F.3d 302 (5ᵗʰ Cir. 2001) .......................................23

*Wilma L. Bushey, In re*, 210 B.R. 95 (BAP 6ᵗʰ Cir. 1997)..............................................13

*Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81 (3ʳᵈ Cir. 1987) ..................................12

*W. Jersey Title & Guar. Co. v. Indus. Trust Co.*, 27 N.J. 144 (1958) ..............................29

*Zolfo, Cooper & Co. v. Sunbeam-Oster Co., Inc.*, 50 F.3d 253 (3ʳᵈ Cir.1995) ..................4

**Rules** ...........................................................................................................**Page**

*Fed. R. Bankr. P. 7012(b)* ........................................................................................11

*Fed R. Bankr P 7017* ..............................................................................................22

*Fed. R. Bankr. P 7017(a)* ..................................................................................1, 23-24

*Fed. R. Bankr. P. 8013* .............................................................................................3

*Fed. R. Civ. P. 12(b)(6)* ......................................................................................11, 12

*Fed. R. Civ. P. 12(c)* ...............................................................................................11

*Fed. R. Civ. P. 17* ...................................................................................................22

*Fed. R. Civ. P. 17(a)* ...............................................................................................23

iv

**Rules (continued)** .......................................................................................**Page**

*Fed. R. Civ. P. 56* ...........................................................................12
*Rule 12(b)* ........................................................................................12
*Rule 7017(a)* ...................................................................................24


**Statutes** .........................................................................................**Page**

### State
*N.J.S.A. 2A:25:2-1* .................................................................13 n. 7, 27

### Federal
*11 U.S.C. § 323(a)* ........................................................................24
*11 U.S.C. § 502(b)* ........................................................................21
*11 U.S.C. § 506(c)* ........................................................................21
*11 U.S.C. § 544* ..................................................14, 21, 25-26, 28
*11 U.S.C. § 544(b)* .....................................................................1-2, 29
*11 U.S.C. § 544(b)(1)* ...................................................................24
*11 U.S.C. §548* .......................................................................13, 25
*11 U.S.C. § 546(a)(1)(A)* .............................................................2, 26
*11 U.S.C. § 550(a)* ........................................................................14
*11 U.S.C. § 704* ............................................................................16
*11 U.S.C. § 704(1)* ........................................................................32
*28 U.S.C. § 157(b)(2)* ...................................................................17
*28 U.S.C. § 157(c)(1)* ....................................................................17
*28 U.S.C. §158(a)(1)* .......................................................................1
*28 U.S.C. § 1334(a)* ......................................................................16
*28 U.S.C. § 1334(b)* ......................................................................17
Section 544(a) ................................................................................14
Section 544.........................................................................14, 16, 27
Section 544(b) ...............................................................................13
Section 546(a) ...............................................................................27
Section 548 ........................................................................13, 14, 16
*Section 726* ...................................................................................16
*§ 544(a)* ........................................................................................15
*§ 544(b)* .....................................................................................8, 15
*§ 546(a)* ........................................................................................27
*§ 1334(b)* ......................................................................................16


**Treatises** .......................................................................................**Page**

*6A Wright & Miller, Federal Practice and Procedure §1555* (2d ed. 1990). .........................23-24

## BASIS OF APPELLATE JURISDICTION

Defendants-Appellants Harbir S. Riar, Riar Petroleum Corp., and Shan & Co. (collectively the "Appellants") are appealing the July 25, 2005 Order and Opinion issued by the Honorable Donald H. Steckroth, U.S.B.J., which became final by virtue of the subsequent Order and Opinion dated October 4, 2007. This Honorable District Court has jurisdiction of this appeal pursuant to *28 U.S.C. §158(a)(1)*, which provides that "[T]he district courts of the United States shall have jurisdiction to hear appeals (1) from final judgments, orders and decrees."

## STATEMENT OF ISSUES PRESENTED

1.      Whether the Bankruptcy Court erred as a matter of law and fact, by not granting Appellants' motion to dismiss plaintiff's Amended Complaint premised on plaintiff's lack of standing to pursue a fraudulent conveyance claim exclusively for his own personal benefit.

2.      Whether the Bankruptcy Court erred as a matter of law and fact, by concluding that subject matter jurisdiction of plaintiff's fraudulent conveyance claim against Appellants was dependent on a determination of plaintiff's status as a secured or unsecured creditor.

3.      Whether the Bankruptcy Court erred as a matter of law and fact, by holding that the Chapter 7 Trustee should be substituted as the proper party to pursue plaintiff's state law fraudulent conveyance claims against Appellants pursuant to *Fed. R. Bankr. P.7017(a)*.

4.      Whether the Bankruptcy Court erred as a matter of law and fact, by concluding that the doctrine of equitable tolling applies to avoid expiration of the statute of limitations on the Chapter 7 Trustee's avoidance powers under *11 U.S.C. § 544(b)*.

1

5.      Whether the Bankruptcy Court's factual finding that the Chapter 7 Trustee's analysis or business judgment was adversely affected by plaintiff's assertion of a secured claim in the assets of Riar Petroleum Corp is clearly erroneous.

6.      Whether the Bankruptcy Court erred as a matter of law and fact, by applying the doctrine of equitable tolling without giving consideration to plaintiff's failure to plead the trustee's avoidance powers under *11 U.S.C. § 544(b)* within the applicable statute of limitations period provided by *11 U.S.C. § 546(a)(1)(A)*.

7.      Whether the Bankruptcy Court erred as a matter of law and fact, by applying the doctrine of equitable tolling without considering whether the Chapter 7 Trustee waived any potential avoidance claims against Appellants by choosing not to challenge plaintiff's alleged security interest in the assets of Riar Petroleum Corp, and filing a Report of no Distribution while the adversary case was still pending.

8.      Whether the Bankruptcy Court erred as a matter of law and fact, by applying the doctrine of equitable tolling without considering whether the Chapter 7 Trustee is judicially estopped from asserting an avoidance claim against Appellants because of her failure to challenge plaintiff's claim of a security interest in Riar Petroleum Corp. and because she filed a Report of No Distribution.

9.      Whether the Bankruptcy Court erred as a matter of law and fact, by applying the doctrine of equitable tolling without considering whether the Chapter 7 Trustee is bound by the prior exercise of her business judgment in electing not to pursue an avoidance claim against the Riar Defendants under *11 U.S.C. § 544(b)* or to challenge plaintiff's claim of a security interest in Riar Petroleum Corp.

10.     Whether the Bankruptcy Court erred as a mater of law and fact, by directing or ordering the Chapter 7 Trustee to pursue an investigation of a fraudulent conveyance

2

claim in the absence of the Chapter 7 Trustee advocating her own position in response to Appellants' motion to dismiss plaintiff's Amended Complaint, or appearing at the trial conducted on December 7, 2006.

## STANDARD OF APPELLATE REVIEW

Pursuant to *Fed. R. Bankr. P. 8013*, the District Court may "affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." In bankruptcy appeals, the District Court reviews findings of fact under a clearly erroneous standard and legal conclusions under a *de novo* standard. *Id.*; *In re Sharon Steel Corp.,* 871 F.2d 1217, 1223 (3rd Cir.1989); *J.P. Fyfe, Inc. of Florida v. Bradco Supply Corp,* 891 F.2d 66, 69 (3rd Cir.1989); *Universal Minerals, Inc. v. C.A. Hughes & Co.,* 669 F.2d 98, 102 (3rd Cir.1981). A factual finding is considered to be clearly erroneous when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *In re Cellnet Data Systems, Inc.,* 327 F.3d 242, 244 (3rd Cir. 2003)(citing *United States v. United States Gypsum* Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)). "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." *Fed. R. Bankr. P. 8013.*

For determinations that involve mixed questions of law and fact, the District Court must apply a mixed standard of review. *Mellon Bank, N.A. v. Metro Commc'n, Inc.,* 945 F.2d 635, 642 (3rd Cir.1981). This Court must accept the Bankruptcy Court's findings of historical or narrative facts unless clearly erroneous, but exercises "plenary review of the trial court's choice and interpretation of legal precepts and its application of those precepts to the historical facts." *Universal Minerals,* 669 F.2d at 101-02.

Additionally, the Bankruptcy Court's exercises of discretion are reviewed for abuse thereof. *Kool, Mann, Coffee & Co. v. Coffey,* 300 F.3d 340, 353 (3rd Cir. 2002). Abuse of discretion can be found when a "judge fails to apply the proper legal standard or to follow proper procedures in making the determination, or bases an award upon findings of fact that are clearly erroneous." *Zolfo, Cooper & Co. v. Sunbeam-Oster Co., Inc.,* 50 F.3d 253, 257 (3rd Cir.1995) (citing *Electro-Wire Prods., Inc. v. Sirote & Permutt, P.C. ( In re Prince),* 40 F.3d 356, 359 (11th Cir.1994)); *see also National Labor Relations Bd. v. Frazier,* 966 F.2d 812, 815 (3rd Cir.1992) (quoting *International Union v. Mack Trucks, Inc.,* 820 F.2d 91, 95 (3rd Cir.1987)) ("An abuse of discretion arises when 'the [lower] court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact.' ").

## STATEMENT OF THE CASE

### Preliminary Statement

Plaintiff-Appellee Arvind Walia ("Walia" or "Appellee") filed an adversary proceeding in the Chapter 7 bankruptcy case of Rabinder Singh ("Singh" or "Debtor") pending in the United States Bankruptcy Court for the District of New Jersey, challenging the dischargeability of a certain debt originating from a loan transaction with the Debtor, and further alleging claims for fraudulent conveyance under the New Jersey law pertaining to the transfer of Singh's former 50% ownership interest in Riar Petroleum Corp. ("RPC") to his partner Harbir S. Riar ("Riar"). Walia filed the case for his own personal benefit, and not as a representative of Singh's bankruptcy estate.

Prior to the transfer, RPC, a Delaware corporation, leased and operated a Getty gas station near Trenton, New Jersey pursuant to written agreements with Getty. Unbeknownst to Riar, who previously had paid monetary consideration for purchasing Singh's share of the business, Singh borrowed money from Walia, and as consideration attempted to give Walia a

4

security interest in a variety of his corporate holdings, including a pledge or assignment of Singh's stock in RPC.[1]

Walia maintained that the stock transfer from Singh to Riar should be voided because of his own alleged security interest in the stock.  Walia further claimed that Shan & Co., a company formed and wholly owned by Riar and which now leases and operates the Getty gas station in question, is the successor-in-interest to RPC and that his security interest should be extended to the stock in that corporation.

From the inception of the adversary case, Appellants challenged Walia's legal standing to bring a fraudulent conveyance action in the context of a bankruptcy case solely for his own personal benefit, and openly questioned the validity of Walia's alleged security interest.

Appellants ultimately moved to dismiss Walia's claims for lack of standing.   The Bankruptcy Court was of the opinion: (i) that the motion could not be resolved until a determination was made as to whether Walia held a secured or unsecured claim against RPC; (ii) the bankruptcy trustee was the proper party to pursue the claims in the event Walia was determined to be an unsecured creditor; and (iii) the doctrine of equitable tolling applied to extend the bankruptcy trustee's 2-year statute of limitations to pursue any fraudulent conveyance claims against Appellants.  This interlocutory ruling was incorporated in the Bankruptcy Court's written Opinion and Order dated July 25, 2005.  (Designation of Record, Adv. No. 03-2810, docket #'s 53 & 54).

The parties presented for trial in the Bankruptcy Court on December 7, 2006 to determine the status of Walia's alleged security interest, whether Singh was entitled to receive a bankruptcy discharge, and whether Singh's debt to Walia should be declared nondischargeable.

---

[1] RPC was formed as a Delaware corporation on April 11, 2006 as reflected by its Certificate of Incorporation filed on the same date with the State of Delaware, Secretary of State, Division of Corporations.   The Fourth provision of RPC's Certificate of Incorporation states that "[T]he amount of the total authorized stock of this corporation is 1500 shares of NO par value."

Although the bankruptcy trustee was put on notice of the trial, she chose not to appear. Following the trial, the Bankruptcy Court concluded: (i) that Walia's claim against RPC was unsecured under the Uniform Commercial Code and directed the Chapter 7 bankruptcy trustee to pursue an investigation of the fraudulent conveyance claims against Appellants; (ii) that Walia did not meet his burden to sustain a ruling of nondischargeability as to his claims; and (iii) that the Debtor would be denied a bankruptcy discharge.   The Bankruptcy Court's trial rulings were incorporated in its written Opinion and Order entered on October 4, 2007.   (Designation of Record, Adv. No. 03-2810, docket #'s 90 & 91).   By virtue of the Bankruptcy Court's October 4, 2004 Opinion and Order, all issues between Appellants and Appellee have been fully adjudicated.   This timely appeal ensued on October 10, 2007.   (Designation of Record, Adv. No. 03-2810, docket # 94).

### **Procedural History**

Singh and his wife filed a voluntary Chapter 13 case in the United States Bankruptcy Court for the District of New Jersey on October 3, 2002.  The case was converted to Chapter 7 by Order entered on April 24, 2003.  (Designation of Record, docket entry #41).   On April 25, 2003, the Office of the United States Trustee ("U.S. Trustee") appointed Eric R. Perkins, Esq. as the Chapter 7 bankruptcy trustee.   (Designation of Record, docket # 42).  On May 15, 2003, the U.S. Trustee vacated its prior appointment of Mr. Perkins as the bankruptcy trustee.[2]  (Designation of Record, docket # 47).

On May 14, 2003, U.S. Trustee appointed Stacy Meisel, Esq. as the Chapter 7 bankruptcy trustee (hereinafter "Chapter 7 Trustee").   (Designation of Record, docket # 48).  A first meeting of creditors was scheduled by the Bankruptcy Court and conducted by the Chapter 7 Trustee on June 27, 2003.  (Designation of Record, docket # 50).

---

[2] Mr. Perkins' law firm, Nicolette & Perkins, represents Appellee.

6

On November 20, 2003, Walia instituted an adversary action by filing a Complaint objecting to discharge and for the recovery of money and property premised on alleged fraud and fraudulent conveyances.[3]  (Designation of Record, Adv. No. 03-2810, docket #1).  Walia named as principal defendants the debtors Navneet Singh, Rabinder Singh ("Singh"), and Appellants. On July 6, 2004, Walia filed an Amended Complaint to include Shan & Co. as an additional defendant.[4]

Appellants answered the Complaint on January 20, 2004 denying Walia's allegations and asserting, among other affirmative defenses, lack of standing.  (Designation of Record, Adv. No. 03-2810, docket # 5, at pp. 7-8, ¶¶6,10; docket #23,  at p. 13, ¶6).  Walia then filed an Amended Complaint on July 6, 2004 to include Shan & Co. as a defendant. (Designation of Record, Adv. No. 03-2810, docket # 14).  Appellants answered the Amended Complaint on September 14, 2004, repeating the same affirmative defenses, including lack of standing.  (Designation of Record, Adv. No. 03-2810, docket # 15).

On June 25, 2004, more than a year following her appointment, the Chapter 7 Trustee determined that Singh's estate had no assets and thus filed a Report of No Distribution and requested to be discharged as Trustee.   (Designation of Record, docket entry date 6/25/2004).  In making this filing, the Chapter 7 Trustee chose not to challenge Walia's claim as a secured creditor.

On March 9, 2005, Walia filed a motion seeking the Court's approval to file a derivative lawsuit on behalf of the estate, but withdrew the motion on the same day.

---

[3] By Stipulation filed with the Court on March  29, 2006, plaintiff agreed to voluntarily dismiss his claims against Debtor Navneet Riar, without prejudice.
[4] The defendants, Harbir S. Riar, Riar Petroleum Corp., and Shan & Co. are collectively referred to as the "Riar Defendants".

(Designation of Record, Adv. No. 03-2810, docket #'s 73 & 74).[5]   On March 17, 2005, Appellants filed a motion to dismiss this adversary action based on Walia's lack of standing to pursue fraudulent conveyance claims, either on behalf of the bankruptcy estate or for his own individual benefit.   (Designation of Record, Adv. No. 03-2810, docket # 49).   Appellants served the Chapter 7 Trustee with these motion pleadings.   (*Ibid*).   The Chapter 7 Trustee took no position with regard to Appellants' motion to dismiss.

On July 26, 2005, the Court issued a Letter Opinion on Appellants' motion to dismiss, declaring that a hearing must be held to determine the status of Walia's claim as secured or unsecured, and that such determination would establish whether or not Walia has standing to maintain this action.  (Designation of Record, Adv. No. 03-2810, docket # 53).  In furtherance of this Letter Opinion, on July 26, 2005 the Court entered an Order Mooting Motion to Dismiss which set forth the scheduling of a further hearing to determine whether Walia's claim is secured or unsecured, declaring that Walia "has the burden of going forward in proof of the secured status of his claim at such hearing," joining the Chapter 7 Trustee "as a party in interest in this adversary action so that she may, if she so elects, pursue an avoidance action for the benefit of the estate under *§ 544(b)* should the claim ultimately be deemed unsecured," and otherwise declaring that the 2-year statute of limitations on the Chapter 7 Trustee's avoidance powers which expired on October 3, 2004 would be equitably tolled due to alleged confusion about the nature of Walia's claim.   *Ibid.*   (Designation of Record, Adv. No. 03-2810, docket # 54).

---

[5] In his Memorandum of Law filed in support of the derivative motion, Walia revealed the reasons why the Trustee chose not to undertake a fraudulent conveyance lawsuit.   "During its investigation, Walia's counsel informed the Trustee of the alleged fraudulent conveyance; however, the Trustee decided not to institute suit or intervene in the adversary proceeding.   The Trustee's decision is understandable for two reasons.   First, the Debtor's estate is a "no-asset estate and therefore the Trustee has no resources to fund the prosecution of the adversary proceeding.   Second, Walia has filed a secured claim asserting that his interest is entirely secured by the Property transferred.   Therefore, the only entity with the requisite motivation to seek the avoidance of the transfer of the Property is Walia." (Designation of Record, Case No. 02-41704, docket # 73, Memorandum of Law, at p. 7).

Following a telephone conference with counsel and upon informal application made by Walia's counsel, by Order entered on December 21, 2005 the Court vacated the automatic stay to permit Walia to preserve his state law remedies against Singh and the Riar Defendants in the event his claim were deemed secured.   (Designation of Record, Adv. No. 03-2810, docket # 59).   Pursuant to the aforesaid Order, on December 28, 2005 Walia filed a separate complaint against Singh and the Riar Defendants in the Superior Court of New Jersey, Law Division, Bergen County, Docket No.: BER-L-0003-06 (the "State Court Action").[6]

A hearing on the remaining issues set forth in the Bankruptcy Court's July 26, 2005 Opinion was conducted on December 7, 2006.   Although notified of the hearing date in advance (Designation of Record, Adv. No. 03-2810, docket # 76), the Chapter 7 Trustee made no appearance at the trial nor filed any pleadings.   Following this hearing, the Bankruptcy Court issued its Opinion and Order dated October 4, 2007 rejecting Walia's security interest and concluding that he is an unsecured creditor, denying Singh a bankruptcy discharge, and directing that the Chapter 7 Trustee  pursue an investigation of the fraudulent conveyance claims originally asserted by Walia.   (Designation of Record, Adv. No. 03-2810, docket #'s 90-91).   This appeal ensued.

**Statement of Facts**

The Bankruptcy Court's October 4, 2007 Opinion sets forth the relevant facts. (Designation of Record, Adv. No. 03-2810, docket # 91).   The salient facts are repeated herein for the benefit of the District Court and Appellee's counsel.   In February of 1996, the Debtor and Mr. Riar purchased a gas station in Trenton, New Jersey.  (*Id.*, at p. 5).   On April 11, 1996, the Debtor and Mr. Riar  incorporated RPC under the laws of the State of Delaware;

---

[6] On Appellants' motion, the State Court Action was dismissed with prejudice against the Riar Defendants pursuant to an Order of Dismissal entered on December 6, 2007 by the Honorable Daniel P. Mecca, J.S.C.

each of them was an officer of RPC holding an equivalent 50% interest in same.  (*Id.*).  The Debtor and Mr. Riar entered into a lease agreement with Getty Petroleum Corporation to operate the gas station.  (*Id.*).

On April 6, 1998, the Debtor took out a business loan from another individual and pledged his 50% stock interest in RPC as collateral.  (*Id.* at p. 6).  The stock interest was represented by a stock certificate in the amount of 200 shares purportedly issued by RPC on April 7, 2006 – which predated the existence of RPC.  (*Id.*).  The Debtor satisfied that loan in 1999.  Thereafter, the Debtor entered into a second series of loan transactions with Walia, pursuant to which he borrowed approximately $400,000 and as collateral for these, again provided Walia with the same stock certificate for 200 shares in RPC (which was held in escrow by a New York lawyer).  (*Id.* at p. 7).  Additional collateral also included UCC-1 financing statements on various businesses owned and/or operated by the Debtor, including RPC.  Appellants denied having knowledge of either loan transaction involving the Debtor's transfer of his 50% ownership interest in RPC.

RPC never issued any stock certificates, however.  (*Id.* at p. 8).  Appellant Riar ultimately purchased his partner's 50% interest in RPC for $30,000 (Designation of Record, Adv. No. 03-2810, docket # 83, 62:4-17), and thereafter formed Shan & Co. to operate the same gas station.  Riar maintains that his purchase of the stock predated the Debtor's subsequent transfer to Walia.   The Bankruptcy Court questioned the credibility of the Debtor's stock transfer to Mr. Riar, but stopped short of making a factual determination that such transfer constituted a fraudulent conveyance insomuch as the bankruptcy judge directed the Chapter 7 Trustee to commence her own independent investigation.

## LEGAL ARGUMENT

## POINT I

## THE BANKRUPTCY COURT ERRED AS A MATTER OF LAW AND FACT BY NOT GRANTING APPELLANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT DUE TO PLAINTIFF'S LACK OF STANDING TO PURSUE A FRAUDULENT CONVEYANCE CLAIM IN THE BANKRUPTCY COURT EXCLUSIVELY FOR HIS OWN PERSONAL BENEFIT

### A.     Failure to State a Claim - Rule 12(b)(6) Standards

Motions to dismiss for failure to state a claim are governed by *Fed. R. Civ. P. 12(b)(6)* made applicable here by *Fed. R. Bankr. P. 7012(b)*.   Pursuant to *Fed. R. Civ. P. 12(c):*

> After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

*Ibid.*

A court may dismiss a claim under *Rule 12(b)(6)* based on a dispositive issue of law without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one.  *Neitzke v. Williams,* 490 U.S. 319, 109 S.Ct. 1827, 102 L.Ed.2d 32 (1989).   A motion made under Rule 12(b)(6) challenges the legal sufficiency of the claim in order to determine whether it should proceed.   *Morris v. Azzi*, 866 F.Supp. 149, 152 (D.N.J. 1994).  "The purpose of the rule is to allow the court to eliminate actions that are fatally flawed in their legal premise and destined to fail, and thus spare the litigants the burdens of unnecessary pretrial and trial activity."  *Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys.*, 988 F.2d 1157, 1160 (Fed. Cir. 1993), *reh'g en banc den.*, *Hess v. Advanced Cardiovascular Systems, Inc.*, 520 U.S 1277 (1977).

11

In deciding a *Rule 12(b)(6)* motion all allegations in the pleadings must be accepted as true, and the plaintiff must be given the benefit of every favorable inference that can be drawn from those allegations.  *See U.S. v. Gaubert*, 499 U.S. 315, 327 (1991); *Conley v. Gibson*, 355 U.S. 41, 48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 83 n. 1 (3rd Cir. 1987).

The issues raised in Appellant's original motion to dismiss were resolvable purely on the pleadings themselves.  Because plaintiff's causes of action arise under federal Bankruptcy Code sections granting exclusive standing to the Chapter 7 trustee to file avoidance actions in bankruptcy proceedings, as demonstrated *infra*, the Bankruptcy Court should have dismissed Walia's Amended Complaint as to Appellants pursuant to *Fed. R. Civ. P. 12(b)(6)*. Alternatively, if necessary, the Bankruptcy Court could have reached the same result under the summary judgment standard of *Fed. R. Civ. P. 56.*

**B.    The Bankruptcy Code Expressly Vests Only The Trustee With The Power To Avoid Fraudulent Transfers**

Appellants argued below that an individual creditor such as Walia lacks standing to pursue a fraudulent conveyance action in the context of federal bankruptcy proceedings. Because standing is an element of federal subject matter jurisdiction, the question as to a party's standing may be raised at any time.  See *In re Ryker*, 301 B.R. 156 (Bankr. D.N.J. 2003); *In re Marlar*, 252 B.R. 743 (BAP 8th Cir. 2000); *Sioux Falls Cable Television v. State of South Dakota*, 838 F.2d 249, 251 (8th Cir. 1988.).  Standing is subject to review at all stages of litigation because a lack of standing undermines the jurisdiction of not only the bankruptcy court, but also the district court acting as an appellate tribunal.  *Ryker*, 301 B.R. at 160 (citing *In re Dionisio*, 80 Fed. Appx. 285 (3rd Cir. 2003)); and *Bender v. Williamsport Area School Dist*. 475 U.S. 534, 546-47, 106 S.Ct 1326, 89 L.Ed.2d 501 (1986).

12

Federal courts have long held that an individual creditor lacks standing to pursue a fraudulent conveyance action.  *See e.g.*, *Blackewell v. Lurie (In re Popkin & Stern)*, 223 F.3d 764, 769, n.11 (8th Cir. 2000); *In re Surf N Sun Apts., Inc., R.D.M.H., Inc.*, 253 B.R. 490 (M.D.Fla. 1999); *In re Wilma L. Bushey*, 210 B.R. 95 (BAP 6th Cir. 1997); *Nebraska State Bank of Jones*, 846 F.2d 477 (8th Cir. 1988); *In Re Joseph Albert Cassis, III*, 220 B.R. 979 (Bankr. N.D.Iowa 1998).   As one court explained:

> [T]he commencement of bankruptcy gives the trustee the right to pursue recovery of fraudulently conveyed assets to the exclusion of all creditors…A creditor who had the right to bring, outside of bankruptcy, a UFTA[7] claim to recover prepetition transfers fraudulently made by the debtor, has no standing to commence or continue the suit during the bankruptcy case, until and unless the trustee relinquishes the Section 544(b) claim or the trustee no longer has a viable cause of action.

*In re Integrated Agri, Inc.*, 313 B.R. 419, 424 (Bankr. C.D.Ill. 2004)(internal citation omitted).

The Bankruptcy Code provides two mechanisms by which fraudulent conveyances may be avoided.  One mechanism is Section 548 which authorizes the <u>trustee</u> to avoid any transfer of an interest of the debtor in property, or an obligation incurred on or within one year before the date of the filing of the petition made with the actual intent to hinder, delay or defraud creditors, or for which the then insolvent debtor received less than reasonably equivalent value.  *11 U.S.C. §548*.  (Emphasis added).  The Debtor filed his voluntary petition for relief on October 4, 2002.  Since Walia alleged that the transfer occurred on or about March 2001, Section 548 was unavailable to aid either the Chapter 7 Trustee or Walia.

A second mechanism to avoid fraudulent transfers is through Section 544(b) of the Bankruptcy Code, which authorizes the <u>trustee</u> to avoid any conveyances which an unsecured

---

[7] UFTA refers to the Uniform Fraudulent Transfer Act.   In New Jersey the UFTA is codified in *N.J.S.A. 2A:25:2-1 et seq.*

creditor could have avoided under applicable state law.  *11 U.S.C. § 544.*[8]  (Emphasis added).

Although in Section 544 Congress expressly granted the bankruptcy trustee with standing to

bring such actions, Section 544 is silent about granting the equivalent power to creditors, debtors

or anyone else.  There is no textual ambiguity.  Accordingly, Bankruptcy Code Sections 544 and

548 expressly vest <u>only the trustee</u> with the authority to avoid fraudulent transfers.  This is

further evidenced by the plain language of *11 U.S.C. § 550(a).*[9]

In *In re Hannah*, 316 B.R. 57 (Bankr. D.N.J. 2004), Bankruptcy Judge Donald

Steckroth, who also presided over the case at bar, held that <u>only</u> the trustee has standing to use

*Section 544(a).*  Persuaded by *Hartford Underwriters Ins. Co. v. Union Planters Bank, NA*., 530

US 1, 120 S.Ct 1942 (2000) and several other decisions, in *Hannah* Judge Steckroth determined

that not even a Chapter 13 debtor has standing to avail himself of the trustee's strong arm

---

[8] Section 544 of the Bankruptcy Code, *11 U.S.C. § 544* provides, in pertinent part that:

> (a)The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

> (1)    a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial line, whether or not such a creditor exists; or

> (2)    a bona fide purchaser of real property, other than fixtures. . .

> (b)(1) Except as provided in paragraph 2, the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under Section 502(e) of this title.

> (2) Paragraph 1 shall not apply to a transfer of a charitable contribution . . . .

[9] 11 USC § 550.  Liability of transferee of avoided transfer

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—
(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
(2) any immediate or mediate transferee of such initial transferee.

avoidance powers under § 544(a).  "What is significant to the case at bar is that in both § 506(c)[10] and § 544(b), the statute empowers only the trustee to take action."  *Hanna*, 316 B.R. at 60.[11]

In *In re Cybergenics Corporation*, 330 F.3d 548 (3rd Cir. 2003), a creditors' committee in a chapter 11 case sought permission to pursue avoidance claims.  The Bankruptcy Court authorized the committee to proceed derivatively, and the committee filed its complaint. The defendant moved to dismiss based on the theory that only the Trustee could avoid fraudulent transfers.  The District Court concurred and the committee appealed.  The Third Circuit Court of appeals held that 1) the Supreme Court's decision in *Hartford* did not prevent the Bankruptcy Court from authorizing the committee's suit and 2) the Bankruptcy Code empowered Bankruptcy Courts as Courts of equity to authorize creditors' committees to sue derivatively to recover property for the benefit of the estate.

However, the facts in the instant matter, like the facts in *Hartford*, a Chapter 7 case, differ in its totality from *Cybergenics*, a Chapter 11 case, in which a creditors' committee, after unsuccessfully petitioning the debtor to pursue an avoidance claim sought permission from the court <u>to recover on behalf of all creditors</u>.  There is no analogous application here since Walia is an individual creditor who pursued relief on his own behalf, not for the benefit of all creditors. Furthermore, Walia never sought permission from the Bankruptcy Court to take such action in the trustee's stead.[12]

In *Hartford*, the Supreme Court explained that a bankruptcy trustee's role in a Chapter 7 case is central by design and this, "unique role. . . makes it entirely plausible that

---

[10] 11 U.S.C. § 506(c).

[11] In the instant case, it is rather unusual that when issuing its July 25, 2006 opinion on Appellants' motion to dismiss the Bankruptcy Court did not even cite its prior decision in *Hannah*, which clearly is relevant to the issues presented before that Bankruptcy Court at that time, and hence is relevant to the issues on appeal.

15

congress would provide a power to him and not to others." *Hartford*, 530 U.S. at 7, 120 S.Ct at 1942.

In *In re Buildings by Jamie, Inc*., 230 BR 36 (Bankr. D.N.J. 1998), the Court explained that Section 544 of the Bankruptcy Code specifically grants the trustee avoidance rights that would be available to creditors under non-bankruptcy law.  He further remarked that a Chapter 7 trustee's duties as the estate's representative are numerous.  *See 11 U.S.C. § 704*.  It is the trustee who is responsible for collecting estate property, reducing it to money and distributing it in accordance with the priorities set forth in Section 726.  *Id.*

The Bankruptcy Court's factual findings concerning Appellants' motion to dismiss were clearly erroneous, and its interpretation of the law represents an abuse of discretion. Application of the foregoing authorities, in particular *Hannah*, *supra*, and *Cybergenics*, *supra*, clearly demonstrate that Walia lacked standing to assert the Chapter 7 Trustee's avoidance powers irrespective of his status as a secured or unsecured creditor and also irrespective of his assertion of the claims under New Jersey law instead of under Bankruptcy Code Sections 544 and 548.

## POINT II

**THE BANKRUPTCY COURT ERRED AS A MATTER OF LAW AND FACT BY FAILING TO DISMISS PLAINTIFF'S AMENDED COMPLAINT REGARDLESS OF HIS STATUS AS EITHER A SECURED OR UNSECURED CREDITOR, BECAUSE THE BANKRUPTCY COURT IS NOT THE APPROPRIATE FORUM FOR AN INDIVIDUAL CREDITOR TO PURSUE CLAIMS THAT DO NOT BENEFIT THE BANKRUPTCY ESTATE AS A WHOLE**

### A.    Bankruptcy Court Jurisdiction

*28 U.S.C. § 1334(a)* provides federal district courts with "original and exclusive jurisdiction  of all cases under title 11." *See 28 U.S.C. § 1334(a)*). In turn, § 1334(b) grants

---

[12] Interestingly, on March 9, 2005 plaintiff filed a motion requesting approval to file a derivative action on behalf of the Debtors' estate.   Plaintiff promptly withdrew this application minutes after it was filed and without explanation, other than to say that it was filed by mistake.

federal district courts with "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." *See 28 U.S.C. § 1334(b)*.

A proceeding is one "arising under title 11" if the claims asserted in the matter are predicated on a right created or determined by title 11. *In re Marcus Hook Dev. Park, Inc.*, 943 F.2d 261, 267 (3rd Cir. 1991). A proceeding "arising in" a case under title 11 includes various administrative matters "that are found only in bankruptcy and which do not exist outside of a bankruptcy case." *Id.* (citation omitted). *See 28 U.S.C. § 157(b)(2)*.

Proceedings "related to" a case under title 11 are generally described as those "non-core" proceedings otherwise related to a case under title 11 and whose outcome could conceivably have an effect on the administration of the bankruptcy estate. *In re The Guild & Gallery Plus, Inc.*, 72 F.3d 1171, 1181 (3rd Cir. 1996)(stating that an action is related to a bankruptcy case "if the outcome could alter the debtor's rights, liabilities, options, or freedom of action . . . and which in any way impacts upon the handling and administration of the bankrupt estate"); *Pacor v. Higgins*, 743 F.2d 984, 994 (3rd Cir. 1984), *rev'd on other grounds* (test for "determining whether a proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy"). *See 28 U.S.C. § 157(c)(1)*.

Walia's fraudulent conveyance claim against Appellants neither "arises in" nor is "related to" a case under Title 11 of the Bankruptcy Code. Because Walia was suing on his own behalf and not for the benefit of all creditors, the outcome of the adversary case regarding Walia's fraudulent conveyance claims against Appellants could not conceivably have any effect on the administration of the Debtor's bankruptcy estate. Thus, the Bankruptcy Court abused its discretion by drawing a distinction that its subject matter jurisdiction over Walia's personal fraudulent conveyance claims was contingent upon a determination of whether his claim was

17

secured or unsecured, especially considering that such claims were entirely predicated on state law as opposed to the specific avoidance powers conferred only upon bankruptcy trustees.

### B.    Rights and Duties of Bankruptcy Trustees to Administer Estate

The United States Supreme Court extensively commented on the rights and duties of a bankruptcy trustee in *Dudley v. Easton*, 104 U.S. 99, 26 L.Ed. 668 (1881):

> "An assignee in bankruptcy represents the general or unsecured creditors, and his duties relate chiefly to their interests. He is in no respect the agent or representative of secured creditors, who do not prove their claims. He need not take measures for the sale of encumbered property, unless the value of the property is greater than the encumbrance. **He has nothing to do with the disputes of secured creditors among themselves, unless it becomes necessary for him to interfere in order to settle their rights in the general estate, or to determine whether there is an excess of property over what is required for the purposes of the security**."

104 U.S. at 103.  (Emphasis added)(Internal citation omitted).

The Court in *Dudley* further remarked that the bankruptcy trustee is the party responsible for pursuing fraudulent conveyances on behalf of creditors:

> **As to everything except fraudulent conveyances and fraudulent preferences under the bankrupt law**, he takes by his assignment, as a purchaser from the bankrupt, with notice of all outstanding rights and equities. Whatever the bankrupt could do to make the assigned property available for the general creditors he may do, but nothing more, **except that he may sue for and recover that which was conveyed in fraud of the rights of creditors**, and set aside all fraudulent preferences. As to such preferences and conveyances he has all the rights of a judgment creditor, as well as the powers specifically conferred by the bankrupt law.

*Ibid.* (Emphasis added).  "It is well settled that it is improper for a bankruptcy trustee to liquidate property solely for the benefit of secured creditors."  *Integrated Agri*, 313 B.R. at 425 (citing *In re Rambo*, 297 B.R. 418 (Bankr. E.D.Pa. 2003)); and *In re Pearson Industries, Inc.*, 178 B.R. 753 (Bankr. C.D.Ill. 1995).  Even upon a showing of extraordinary circumstances, an individual creditor such as Walia may not pursue fraudulent transfer claims in Bankruptcy Court.  *See e.g.,*

18

*Surf N Sun Apts., Inc., R.D.M.H., Inc.*, *supra*; *Integrated Agri*, 313 B.R. at 429 (no jurisdiction exists over a secured creditor's state law fraudulent transfer action because it would not effect the estate or administration of the case); *In re Michener*, 217 B.R. 263, 270-271 (Bankr. D.Minn. 1998)(holding that federal jurisdiction does not exist over a lien enforcement action in which the bankruptcy estate has no interest).

In the case at bar, the Bankruptcy Court correctly remarked:

> A secured creditor's independent action to recover property for himself does nothing to maximize the bankruptcy estate. Therefore, there is no foundation for an action unrelated to the bankruptcy estate to be resolved in the bankruptcy court. In short, the bankruptcy court is not to be used as a collection forum for secured creditors."

(Designation of Record, Adv. No. 03-2810, docket # 53, at p. 8). [13]

In an attempt to avoid application of federal law, Walia purposely brought his fraudulent conveyance claims against Appellants under New Jersey fraudulent conveyance law. However**,** in the area of insolvency law New Jersey common law is in accord with federal law. For example, in *Portage Insulated Pipe Co. v. Costanza*, 114 N.J. Super. 164 (App. Div. 1971), the Appellate Division of the Superior Court of New Jersey held that a single creditor is prohibited from bringing an action to set aside or recover preferences unless the suit is brought for the benefit of all the corporation's creditors. The Appellate Division explained:

> An action to set aside such preferences, if brought by a single creditor instead of by a receiver or trustee in bankruptcy of the corporation, must be brought for the benefit of all the creditors of the corporation. *See, Central-Penn National Bank v. N.J. Fidelity, etc., Co.*, 119 N.J. Eq. 265, 271-272 (Ch. 1935); *Landis v. Sea Isle City Hotel Co*., 53 N.J. Eq. 654 (E. & A. 1895).

114 N.J. Super. at 167.

---

[13] Notwithstanding this correct statement of the law, the Bankruptcy Court nevertheless allowed Walia to continue his litigation in Bankruptcy Court so that his security interest could be determined. Since Walia was pursuing the fraudulent claim solely for his own benefit, there was no justifiable reason why the Bankruptcy Court retained any

Thus, under New Jersey law Walia was prohibited from bringing an action to recover from Appellants the amount of the alleged fraudulent transfer which formed the basis of his claims against Debtor Singh.   By suing Appellants in the Bankruptcy Court alleging that the transaction with Debtor Singh constituted a fraud upon Singh's creditors under New Jersey law, but seeking to recover only for his own benefit, Walia clearly failed to state a claim upon which relief may be granted in the Bankruptcy Court.  *See Portage Insulated Pipe Co., supra.*

In a situation such as this case, where the Chapter 7 Trustee was appointed and charged with the responsibility of marshalling Singh's assets for the benefit of all creditors and ultimately filed a Report of No Distribution, Walia clearly lacked legal standing to pursue his individual fraudulent conveyance claims against Appellants exclusively for his own personal benefit.  Consequently, the Bankruptcy Court lacked jurisdiction over the dispute and therefore should have dismissed Walia's Amended Complaint as a matter of law.   *See e.g. Pacor v. Higgins*, 743 F.2d at 994 (test for "determining whether a proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy").

**POINT III**

**THE BANKRUPTCY COURT ERRED AS A MATTER OF LAW AND FACT BY CONCLUDING THAT THE CHAPTER 7 TRUSTEE SHOULD BE SUBSTITUTED AS THE PROPER PARTY TO PURSUE PLAINTIFF'S STATE LAW FRAUDULENT CONVEYANCE CLAIMS AGAINST APPELLANTS PURSUANT TO FED. R. BANKR. P. 7017(a).**

Without any factual justification, the Bankruptcy Court summarily concluded that the Chapter 7 Trustee was mislead about the nature of Walia's secured claim, that this resulted in confusion on her part in electing not to challenge Walia's claim of a security interest in the

---

interest in adjudicating Walia's claim status for regardless of the outcome there would be no benefit to the bankruptcy estate as a whole.

relevant assets, and that she lacked standing to pursue the claim until Walia's claim status was resolved.   Specifically, the Bankruptcy Court remarked:

> Here, the nature of the claim as asserted by Plaintiff prevented the Trustee from pursuing – or properly analyzing whether to pursue – an action to avoid the alleged transfer under § 544(b). Under these circumstances, until the status of the claim is known, the statute of limitations is tolled.  Defendants claim that the Trustee was aware that the Defendants challenged Plaintiff's status as a secured creditor.  This challenge alone is not sufficient, since the trustee lacked, and continues to lack, standing to pursue an avoidance action unless and until the claim is deemed unsecured.

(Designation of Record, Adv. No. 03-2810, docket # 53, at p.13).   Based on this flawed approach, the Bankruptcy Court misapplied the doctrine of equitable tolling to save the Chapter 7 Trustee from the statute of limitations bar.

The Bankruptcy Court's factual findings and legal conclusions, as set forth above, are clearly erroneous and constitute an abuse of the Bankruptcy Court's discretion.   The Bankruptcy Court clearly misinterpreted  the Chapter 7 Trustee's s standing to assert avoidance powers under 11 U.S.C. § 544 as being contingent on Walia's  claim's status as being unsecured after the Chapter 7 Trustee was repeatedly notified of the contested status of the claim and still filed a Report of No Distribution.  It is respectfully requested that the District Court take judicial notice that bankruptcy trustees routinely investigate the validity of secured claims asserted by creditors.  *See e.g.*, *11 U.S.C. §§ 502(b)[14] and 506(c).*[15]

---

[14] Determination of a creditor's secured status is governed by 11 U.S.C. § 506.   Subsection (a)(1) of this statute states, in relevant part:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim.   Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.  [11 U.S.C. § 506(a)(1].

[15] Pursuant to 11 U.S.C. 502(b)(1), if an objection to a claim is made, "the court, after notice and a hearing, shall determine the amount of  such claim in lawful currency of the United States as of the date of the filing of the

It should not escape the District Court's attention that the Chapter 7 Trustee never entered an appearance in the underlying adversary case or advocated a position in response to Appellants' motion to dismiss despite being served with the motion.  (Designation of Record, Adv. No. 03-2810, docket # 49).  Furthermore, previous statements from Walia's counsel clearly contradict the Bankruptcy Court's findings, to wit:

> During its investigation, Walia's counsel informed the Trustee of the alleged fraudulent conveyance; however, the Trustee decided not to institute suit or intervene in the adversary proceeding. The Trustee's decision is understandable for two reasons.  First, the Debtor's estate is a "no-asset" estate and therefore the Trustee has no resources to fund the prosecution of the adversary proceeding. Second, Walia has filed a secured claim asserting that his interest is entirely secured by the Property transferred.  Therefore, the only entity with the requisite motivation to seek the avoidance of the transfer of the Property is Walia."

(Designation of Record, Case No. 02-41704, docket # 73, Memorandum of Law, at p. 7).[16]

*Fed. R. Civ. P. 17* made applicable in bankruptcy by *Fed. R. Bank. P. 7017* provides, in pertinent part:

> (a)     Every action shall be prosecuted in the name of the real party in interest.   An executor, administrator, guardian, bailee, trustee of an express trust, a party with whom name a contract has been made for the benefit of another, or a party authorized by statute may sue in that person's own name without joining the party for whose benefit the action is brought; …  No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of the commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

---

petition, and shall allow such claim in such amount, except to the extent that -  (1) such claim is unenforceable against the debtor and property  of the debtor, under any agreement or applicable law for a reason  other than because such claim is contingent or unmatured;…." *Ibid.*

[16] It should be of no consequence that this statement appears in a motion pleading that Walia subsequently withdrew. To the contrary, the statement is very telling and supports Appellants' position that the Chapter 7 Trustee knew all along what Walia's claim was about and simply chose not to challenge his alleged security interest.

*Ibid.* "This rule insures that a party litigating a particular issue is actually the party entitled to enforce the claim or right being litigated." *Ryker*, 315 B.R. at 674.[17] "A real party in interest is one who has substantive rights that may be enforced in the litigation." *Integrated Agri, Inc.*, 313 B.R. at 426 (citing *U.S. v. Aetna Cas. & Sur. Co.*, 338 U.S. 366, 70 S.Ct. 207, 94 L.Ed. 171 (1949)).

Subject to certain exceptions noted below, the last sentence of *Fed. R. Civ. P. 17(a)* allows a correction of the parties after a statute of limitations has run, despite a valid objection from the party. *Hess v. Eddy*, 689 F.2d 977 (11th Cir.1982), *cert. denied*, 462 U.S. 1118, 103 S.Ct. 3085, 77 L.Ed.2d 1347 (1983). "By allowing a party substitution to relate back to the date the action was commenced, this provision furthers the policy of the federal rules that an error in the choice of party at the pleading stage should not be made at the risk of later dismissal, especially when there is a concern over a limitations period." *In re Dygert*, 232 B.R. 155, 158 (Bankr. D.Minn. 1999)(citing *6A Wright & Miller, Federal Practice and Procedure §1555* at 413-14 (2d ed. 1990)).

However, the last sentence of *Fed. R. Bank. P. 7017*(a) is "applicable only when the plaintiff brought the action in [their] own name as the result of an understandable mistake, because the determination of the correct party to bring the action [was] difficult." *Weiburg v. GTE Southwest Inc.*, 272 F.3d 302, 308 (5th Cir. 2001) (emphasis added.). If determining the proper party plaintiff is not difficult, and the mistake in doing so is not understandable, then the last sentence of *Rule 7017(a)* does not apply and the action should be dismissed. *6A Wright & Miller, Federal Practice and Procedure* §1555 (2d ed. 1990). In fact, in *Integrated Agri,* the

---

[17] "The real party in interest principle is typically raised defensively by a defendant who is concerned about the possibility of being subjected to a second suit brought by a person having a substantive interest in the cause of action who may claim not to be bound by the judgment in the first suit." *In re Integrated Agri, Inc.,* 313 B.R. 419, 427 (Bankr. C.D.Ill. 2004).

court specifically held that *Rule 7017* was not applicable to ratify a bankruptcy trustee's time-barred UFTA claims.  313 B.R. at 428.

The bankruptcy trustee is the representative of the estate.  *11 U.S.C. § 323(a)*.  In the instant matter it is undisputed that the Chapter 7 Trustee was the real party in interest empowered to bring fraudulent conveyance actions under the Bankruptcy Court's jurisdiction. *See Integrated Agri, Inc.*, 313 B.R. at 437 (the court held that the bankruptcy trustee is the exclusive real party in interest to bring direct actions to avoid transfers voidable under applicable state law, pursuant to *11 U.S.C. 544(b)(1)*); *In re Auxano, Inc.*, 87 B.R. 72 (Bankr. W.D.Mo. 1988)("An action before the Court to set aside a fraudulent transfer must be in the name of the bankruptcy estate as the real party in interest").

Walia, as the party filing an action had the burden of showing that the real party in interest was difficult to determine, or that he made an understandable mistake in determining the proper plaintiff.  *See Feist v. Consolidated Freightways Corp.*, 100 F. Supp. 2d 273, 276 (E.D. Pa. 1999).   Walia never advocated an argument for application of *Fed. R. Bankr. P. 7017(a)*. The Bankruptcy Court made no factual finding that Walia made an understandable mistake in asserting the fraudulent conveyance claims in his own name or that he had difficulty determining that the Chapter 7 Trustee was the proper party to litigate these claims.  To the contrary, as previously mentioned on March 9, 2005 Walia initially filed a motion seeking derivative authority to file the suit – thus demonstrating that he knew who the proper party was prior to Appellants' filing their motion to dismiss on March 17, 2005.  (Designation of Record, Adv. No. 03-2810, docket #'s 73-74).

It is abundantly clear that Bankruptcy Court completely ignored the applicable standards required to apply *Fed. R. Bankr. P. 7017(a)*.   In the face of this undisputed record, the Bankruptcy Court's solution was to *sua sponte* create fictitious facts neither supported by the

24

record nor advocated by Walia or the Chapter 7 Trustee; namely, that the Chapter 7 Trustee was misled about the nature of Walia's claim of holding a security interest in RPC's assets, and that as a result the doctrine of equitable tolling applied to preserve the statute of limitation on the Chapter 7 Trustee's avoidance powers pending the determination of Walia's status as a secured or unsecured creditor.   (Designation of Record, Adv. No. 03-2810, docket # 53, at p. 13).   The Bankruptcy Court's factual findings in this regard are not only clearly erroneous, but its clear misapplication of the law constitutes an egregious abuse of discretion.

Prior to filing this Adversary Proceeding, Walia must be charged with knowledge that the trustee was the only proper party to pursue the avoidance action.[18]   The applicable sections of the Bankruptcy Code, *11 U.S.C. §§544* and *548*, clearly state that fraudulent conveyance actions are to be brought by the trustee.   The overwhelming weight of authority holds that the trustee is the only proper party to initiate and prosecute avoidance actions.   It is undisputed that the Chapter 7 Trustee had actual notice of the adversary action, received service of the relevant pleadings, including Appellants' motion to dismiss and the subsequent trial date, and filed a Report of No Distribution prior to the conclusion of the adversary action thus reflecting her business judgment that the case represented a "no-asset" case even if Walia's assertion of a secured claim was rejected by the Court.    In view of these undisputed facts, there was no legal or factual basis for the Bankruptcy Court to apply *Fed. R. Bankr. P. 7107(a)*.

---

[18] It should not go unnoticed that Walia has retained experienced bankruptcy counsel in the law firm of Nicolette & Perkins.   In fact, one of the firm's principals, Eric Perkins, Esq., is a Chapter 7 panel trustee.

## POINT IV

## THE BANKRUPTCY COURT ERRED AS A MATTER OF LAW AND FACT BY CONCLUDING THAT THE DOCTRINE OF EQUITABLE TOLLING APPLIES TO AVOID EXPIRATION OF THE STATUTE OF LIMITATIONS ON THE CHAPTER 7 TRUSTEE'S AVOIDANCE POWERS UNDER 11 U.S.C. 544(b).

As the Bankruptcy Court correctly concluded, "[T]he statute of limitations for the Chapter 7 Trustee to assert her avoidance powers under *11 U.S.C. §544* expired on October 3, 2004, pursuant to *11 U.S.C. §546(a)(1)(A)*.  (Designation of Record, Adv. No. 03-2810, docket # 53, at p. 11).   In the absence of any established facts from the record below, however, the Bankruptcy Court erroneously applied the doctrine of equitable tolling to avoid expiration of the 2-year statute of limitations governing the Chapter 7 Trustee's avoidance powers.  Again, neither Walia nor the Chapter 7 Trustee advanced this legal argument below.  Instead, the Bankruptcy Court raised the issue *sua sponte,* but did so without there being a proper legal or factual foundation to support application of this extraordinary equitable doctrine.

### A.    No Extraordinary Circumstances Exist to Apply the Doctrine of Equitable Tolling

The doctrine of equitable tolling functions to stop statute of limitations from running when the claim's accrual date already has passed.   *Beydoun v. U.S.*, 969 F.Supp. 283 (D.N.J. 1997).  *Accord In re G-1 Holdings, Inc.*, 313 B.R. 612, 647 (Bankr. D.N.J. 2004), (quoting *Seitzinger v. Reading Hosp. & Med. Cter.*, 165 F.3d 236, 240 (3rd Cir. 1999))(Under the doctrine of equitable tolling, plaintiffs may sue after the statutory time period for filing a complaint has expired if they have been prevented from filing in a timely manner due to sufficiently inequitable circumstances).  The federal common law tolling doctrines apply to all federal limitations statutes, *Holmberg v. Armbrecht,* 327 U.S. 392, 397, 66 S.Ct. 582, 90 L.Ed. 743 (1946), including those found in the Bankruptcy Code. *See, e.g., In re Olsen,* 36 F.3d 71, 73 (9th Cir.1994).

"As long as the state law statute of limitations has not run before the debtor's filing for bankruptcy, the trustee can bring a fraudulent conveyance action as long as he [or she] complies with the provisions of § 546(a)."  *G-1 Holdings*, 313 B.R. at 646 (quoting *Gibbons v. First Fid. Bank, N.A. (In re Princeton-New York Investors, Inc.),* 199 B.R. 285, 294 (Bankr.D.N.J.1996)(other internal citations omitted)).  *See also In re Bldgs. by Jaime, Inc.,* 230 B.R. 36, 45 (Bankr.D.N.J.1998)(noting that "actions brought under Section 544 are subject to Section 546(a) which expands the time during which the trustee can exercise avoidance rights, so long as the state statute of [limitations] has not run prior to his [or her] appointment") (citation omitted).   Walia brought his claims under the New Jersey Uniform Fraudulent Conveyance Action pursuant to *N.J.S.A. 2A:25-1*, *et seq.*, which has a four (4) year statute of limitations claim.  However, unlike Walia the Chapter 7 Trustee had only two (2) years from the Singh's bankruptcy filing in which to assert this cause of action – which was October 3, 2004.  The Chapter 7 Trustee did not file such a claim, however.

As Bankruptcy Judge Rosemary Gambardella explained in *G-1 Holdings:*

> Ordinarily, equitable tolling may be appropriate where: 1) the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; 2) the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or 3) the plaintiff has timely asserted his or her rights mistakenly in the wrong forum… The question of whether a statute of limitations should be equitably tolled is necessarily a factual one and is usually not ripe for consideration on a motion to dismiss….

*G-1 Holdings*, 313 B.R. at 648 (internal citations omitted).    *Accord Jones v. Morton*, 195 F.3d 153, 159 (3rd Cir. 1999).

The basic principle underlying the equitable tolling doctrine is "the fundamental rule of equity that a party should not be permitted to profit from its own wrongdoing."   *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1388 (3rd Cir. 1994).  "To allow a defendant to benefit from the statute of limitations defense after intentionally misleading the plaintiff with

regard to the cause of action, thereby causing the plaintiff's tardiness, would be 'manifestly unjust.'" *Id.* at 1389 (internal citation omitted).   Mere excusable neglect, however, is not sufficient to warrant equitable tolling.   *Jones v. Morton,* 195 F.3d at 159 (quoting *Miller v. New Jersey State Dep't of Corrections,* 145 F.3d 616, 618 (3rd Cir.1998)).

There were no extraordinary circumstances present in the instant case that merit application of the doctrine of equitable tolling, or any facts proving that the Chapter 7 Trustee was mislead about the nature of Walia's claim.   At no point during the adversary litigation did Walia or the Chapter 7 Trustee advocate an equitable tolling argument.   In point of fact, the entire record below confirms the absence of any factual or legal basis for application of the doctrine of equitable tolling.   By way of example, Walia never argued that either Singh or the Appellants mislead him about the nature of his security interest or that he was prevented in some extraordinary way from pursuing his remedies.   To the contrary, Walia retained experienced bankruptcy counsel[19] who zealously advocated his rights and remedies throughout the entire case. Further, from the outset when Appellants filed their responsive pleadings they put Walia on actual notice of their affirmative defense of lack of standing.   (Designation of Record, Adv. No. 03-2810, docket # 5, at pp. 7-8, ¶¶6,10; docket #23, at p. 13, ¶6).   In fact, Walia's bankruptcy counsel expressly acknowledged to the Bankruptcy Court, that, "[T]hroughout litigation of the adversary proceeding, between the parties, Defendants have contested Plaintiff's secured status and standing to bring said adversary proceeding."   (Designation of Record, Case No. 02-41704, docket #73, Certification of Donald F. Campbell, Jr., Esq., at page 2).   The Trustee, as noted above, filed her report of "no assets" *after* she learned of the adversary proceeding but *before* it was decided, and therefore she knew that the Court could reject Walia's assertion of a secured interest in what he alleged were assets of the Debtor Singh.

28

The record below reflects that Walia doubted his legal standing back on March 9, 2005 when he filed his motion seeking derivative standing to pursue the fraudulent conveyance claims for the benefit of creditors.  (Designation of Record, Case No. 02-41704, docket # 73).  However, Walia withdrew the motion on the same day.  Walia consciously and stubbornly chose to ignore Appellants challenge to his legal standing, as did the Chapter 7 Trustee.  Consequently, neither of these parties is deserving of the benefit of equitable tolling.

**B.     The Bankruptcy Court Abused its Discretion by Applying the Doctrine of Equitable Tolling Despite Plaintiff's Failure to Plead The Trustee's Avoidance Powers.**

Plaintiff's Amended Complaint does not plead the Chapter 7 Trustee's avoidance powers under *11 U.S.C. § 544(b)* – and for good reason:  Because plaintiff, who at all times was represented by competent bankruptcy counsel, knew he lacked legal standing.   Instead, plaintiff brought his claims exclusively under New Jersey law.  The Bankruptcy Court clearly abused its discretion by applying the doctrine of equitable tolling to rescue a claim that was never raised in the first place; namely, the trustee's avoidance powers under *11 U.S.C. § 544(b).*

**C.     The Bankruptcy Court Abused its Discretion by Applying the Doctrine of Equitable Tolling to Resuscitate a Claim Waived by the Chapter 7 Trustee**

The Chapter 7 Trustee knowingly and voluntarily waived whatever avoidance claims she could have brought against Appellants by choosing not to challenge plaintiff's alleged security interest in the assets of RPC, as evidenced by her filing a Report of No Distribution while the nature of Walia's status as a creditor remained to be determined in the adversary action.

Waiver is defined as the voluntary and intentional relinquishment of a known right. *W. Jersey Title & Guar. Co. v. Indus. Trust Co.,* 27 *N.J.* 144, 152 (1958). An effective waiver requires a party to have full knowledge of his legal rights and intent to surrender those

---

[19] Eric R. Perkins, Esq., who previously was appointed as the initial Chapter 7 Trustee, is a Chapter 7 Panel Trustee.

rights. *Id.* at 153.   The intent to waive need not be stated expressly, provided the circumstances clearly show that the party knew of the right and then abandoned it, either by design or indifference.   *See Merchs. Indem. Corp. of N.Y. v. Eggleston,* 68 *N.J Super.* 235, 254 (App.Div.1961), *aff'd,* 37 *N.J.* 114 (1962). The party waiving a known right must do so clearly, unequivocally, and decisively.   *Country Chevrolet, Inc. v. Township of N. Brunswick Planning Bd.,* 190 *N.J. Super.* 376, 380, 463 *A.*2d 960, 962 (App.Div.1983).

In the present case, the Chapter 7 Trustee's filing of a Report of No Distribution prior to the time Appellants moved to dismiss the adversary action conclusively establishes that she knowingly and voluntarily waived whatever claims she could have asserted and otherwise abandoned those claims.   If that action alone were not enough to constitute a waiver, the Chapter 7 Trustee's continued silence throughout the entire adversary litigation certainly is indicative that she waived her avoidance claims.   The Bankruptcy Court's application of the doctrine of equitable tolling under these circumstances constitutes an abuse of discretion.

**D.** **The Bankruptcy Court Abused its Discretion by Applying the Doctrine of Equitable Tolling Because the Chapter 7 Trustee is Judicially Estopped From Asserting an Avoidance Claim Against Appellants**

The Third Circuit has defined the doctrine of judicial estoppel as follows: "[A] party to litigation will not be permitted to assume inconsistent or mutually contradictory positions with respect to the same matter in the same or a successive series of suits." *Scarano v. Central R.R.,* 203 F.2d 510, 513 (3rd Cir.1953) (quotations and citations omitted); *see Davis v. Wakelee,* 156 U.S. 680, 689, 15 S.Ct. 555, 558, 39 L.Ed. 578 (1895) (setting out the parameters of the doctrine in general terms); *Delgrosso v. Spang & Co.,* 903 F.2d 234, 241 (3rd Cir.), *cert. denied,* 498 U.S. 967, 111 S.Ct. 428, 112 L.Ed.2d 412 (1990) ("Unlike the concept of equitable estoppel, which focuses on the relationship between the parties, judicial estoppel focuses on the

---

Mr. Perkins' law firm, Nicolette & Perkins, represented Mr. Walia throughout the Singh bankruptcy proceedings.

relationship between the litigant and the judicial system....");  More precisely, the Circuit has also stated that judicial estoppel bars a litigant from "playing 'fast and loose with the courts' " in an attempt to "contradict himself in an effort to establish against the same adversary a second claim inconsistent with his earlier contention." *Scarano,* 203 F.2d at 513 (citation omitted); *see In re Walnut Assocs.,* 145 B.R. 489, 498 (Bankr.E.D.Pa.1992) ("the [judicial estoppel] doctrine must be applied with 'caution.' ") (citations omitted).

In the case at bar, the Chapter 7 Trustee's filing of a Report of No Distribution, which is tantamount to her concluding that the bankruptcy estate would not benefit from the pursuit of Walia's fraudulent conveyance claims, combined with her continued silence during the next 2+ years of the litigation judicially estop her from asserting her avoidance powers several years after the fact – and after expiration of the statute of limitations period on such claims on October 4, 2004.   It was an abuse of discretion for the Bankruptcy Court to apply the doctrine of equitable tolling under these circumstances.

It was a further abuse of discretion for the Bankruptcy Court literally to "order" the Chapter 7 Trustee to pursue an investigation of the claim when, in fact, she had a fiduciary duty to do exactly that from the beginning of her appointment in 2003.    It would be manifest error to allow the Chapter 7 Trustee to receive the benefits of the equitable doctrine of tolling, the effect of which would allow her to adopt inconsistent and mutually contradictory positions from those advocated by hear earlier actions; namely, electing not to challenge Walia's claim of a security interest and filing a Report of No Distribution.

## POINT V

## THE BANKRUPTCY COURT'S FINDINGS THAT THE CHAPTER 7 TRUSTEE'S ANALYSIS WAS ADVERSELY AFFECTED BY PLAINTIFF'S ASSERTION OF HIS SECURED STATUS CONSTITUTES AN UNWARRANTED INTRUSION INTO THE TRUSTEE'S BUSINESS JUDGMENT, AND THEREFORE IS CLEARLY ERRONEOUS

A bankruptcy trustee has a fiduciary relationship with all creditors of the bankruptcy estate. *In re Martin*, 91 F.3d 389, 394 (3rd Cir. 1996)(citing *11 U.S.C. § 704(1)*(other internal citations omitted)).

> Indeed, under the Code a trustee must investigate all sources of income for the estate and "collect and reduce to money the property of the estate." 11 U.S.C. § 704(1). She has the duty to maximize the value of the estate, *Weintraub*, 471 U.S. at 353, 105 S.Ct. at 1993, and in so doing is "bound to be vigilant and attentive in advancing [the estate's] interests."

*Martin*, 91 F.3d at 394.

Bankruptcy trustees are cloaked with the protection of the "business judgment" rule regarding decisions they make in carrying out their fiduciary duties. "The purpose of the business judgment rule is to protect corporate directors from personal liability that would result from second-guessing undertaken by courts with the benefit of 20/20 hindsight and to promote the free exercise of managerial power." *In re Classica Group*, Slip Copy, 2006 WL 2818820 (Bankr. D.N.J. 2006)(internal citations omitted). Bankruptcy courts routinely apply the business judgment test to evaluate bankruptcy trustee's administration of assets. See e.g. *Matter of Taylor*, 103 B.R. 511 (D.N.J. 1989)(Remarking that the only test to employed to aid judicial review of a trustee's decision to reject an executory contract is the business judgment test); *In re Eastwind Group, Inc.*, 303 B.R. 743, 750 (Bankr. E.D.Pa. 2004)(In evaluating whether to approve or reject a settlement proffered by a bankruptcy trustee, the court should avoid second-guessing the bankruptcy trustee's exercise of business judgment); *In re Federal Mogul Global, Inc.* , 293 B.R. 124 (D.Del. 2003); *In re Interpictures, Inc.*, 168 B.R. 526, 535 (Bankr. E.D.N.Y. 1994)(Courts

defer to trustee's judgment and place the burden on the party opposing abandonment of property to prove a benefit to the estate and an abuse of the trustee's discretion).

In exercising her business judgment in the instant case, the Chapter 7 Trustee determined not to pursue any investigation concerning Walia's claim of having a security interest.   As previously mentioned, the Chapter 7 trustee received actual notice of Walia's adversary case filing.   Instead of intervening in the case, she elected to file a Report of No Distribution after receipt of that notice and prior to the conclusion of the litigation.   Even when the Chapter 7 trustee was afforded two (2) "second bites" at the apple – after Walia filed his motion requesting derivative approval and Appellants filed their motion to dismiss for lack of standing – in the further exercise of her business judgment she decided not to participate in the adversary action.   This "disinterestedness" on the part of the Chapter 7 trustee continued through to the December 7, 2006 trial, when she chose not to appear at the hearing despite receiving advanced notice of the trial date.  (Designation of Record, Adv. No. 03-2810, docket entry #    ). Further, in Walia's own words, the Chapter 7 Trustee neither had the resources nor the incentive to pursue the avoidance action because of Walia's assertion of a secured claim.   (Designation of Record, Case No. 04-41704, docket # 73, Memorandum of Law, at p. 7).

In view of the Chapter 7 Trustee's exercise of her business judgment, it was inapppropiate for the Bankruptcy Court to be "second-guessing" her decision not to challenge Walia's secured claim status.   The Chapter 7 Trustee never came forward herself to claim she was "mislead" by the nature of plaintiff's creditor status, and given her awareness of the adversary action, the possibility that the Court could find plaintiff was not a secured creditor, and her determination that the Estate had "no assets", it is clear that she was not misled, but was exercising her business judgment.   Under these circumstances, and in the face of the Chapter 7 Trustee's exercise of her business judgment, it was clearly erroneous for the Bankruptcy Court to

33

have concluded that the Chapter 7 Trustee's business judgment was adversely affected by Walia's assertion to be a secured creditor.

## CONCLUSION

For the foregoing reasons and authorities, Appellants respectfully request that this Honorable District Court reverse the Bankruptcy Court's July 25, 2006 Opinion and corresponding Order, made final by the Bankruptcy Court's subsequent Opinion and Order entered on October 4, 2007, and dismiss Walia's Amended Complaint in its entirety as to Appellants for lack of standing or lack of subjection matter jurisdiction.

Respectfully submitted,

LOFARO & REISER, LLP
Attorneys for Defendants-Appellants,
    Harbir S. Riar, Riar Petroleum Corp.,
    and Shan & Co.


By:  /s/Glenn R. Reiser
        Glenn R. Reiser

Dated:  December 11, 2007

34